PATTERSON vs. LA FARGE.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action is brought on two bills of exchange, drawn by defendant's agent in favour of the plaintiff, in pursuance of an award made in France by arbitrators chosen by them, to settle the affairs of the partnership, of which the parties to this suit are members.

The petition sets out the partnership; the difficulties that had arisen between the partners; the power of attorney given by the defendant to an agent in France, to settle the affairs of the firm; the substitution of that power to another—his submission to arbitration—the award of the arbitrators—the drawing of the bills in conformity with the award—the refusal of defendant to accept them; and concludes with an allegation, that the defend-

An authority to an agent to compromise and arbitrate, does not authorise a submission to amicable compounders with a renunciation of appeal.

ant had therefore become liable to pay the amount of the bill, with damages, interest and costs.

The answer admits the partnership, but alleges that the defendant had advanced all the capital stock—that the firm had sustained heavy losses—that the plaintiff had with-drawn a large portion of the capital—that the balance due by him to the defendant, was 153,324 francs—that the award was obtained fraudulently, and was null and void—and that all the other allegations in the petition were untrue.

The first, and one of the most important questions in the cause is, whether the power of attorney, given by the defendants, authorised the submission to arbitration.

It was executed in New York, and confers, in the usual terms, authority on the agent to demand, collect and sue, by all lawful means, any money that might be due the principal, or firm of La Farge & Patterson; "or also to make, or cause to be made, a dissolution of the firm by public notice, *arbitration*, suit, process, or otherwise, howsoever, according to the laws of France."

After an enumeration of various other powers,

not necessary to be set forth, the instrument contains another clause, confining the authority in the attorney in fact, to sue and recover, by all lawful means, from William D. Patterson, all and every such sum of money as may be due by him to the principal, upon settling the concerns, affairs and transactions of the firm of La Farge & Patterson ; " and to that end, to view, examine, state, settle, adjust and balance all accounts, to compound, compromise, *arbitrate,* conclude and agree all differences."

The defendant insists, this authority did not sanction, nor permit the agent to confer the following power on the persons chosen to settle the affairs of the partnership."

" We, the undersigned, dispense the arbitrators with the necessity of pursuing the forms of justice, and beg of them to pronounce in the last resort on the points in contestation, as *amicable compounders,* in the delay of two months, upon the memorials which will be submitted to them by the parties, without being subject to the forms and delays of a suit.

"The undersigned renounce an appeal, or recourse to justice, no matter what may be the causes or motives, even for that of nullity;

and in case they cannot agree, they are autho-rised to name a third person, whose decision will be sovereign and irrevocable."

We agree in opinion with the defendant's counsel, that in making this submission, the agent exceeded his powers. There was no authority given by the mandate, to deprive the defendant of the protection which the laws of the place where it was to be exe-cuted, might have extended to him. The renunciation is of a most extraordinary kind. The agent abandoned all recourse to justice, no matter what might be the causes or motives: so that if there had been fraud or corruption, the principal was obliged to sub-mit to it. No man can be *presumed* to give such a power to another: and we are satisfied that in the instance before us, the mandate did not *express* it. The authority to *compound, conclude, and agree,* was personal to the attor-ney, and cannot be extended to arbitrators, in whose selection, the person opposed to the principal, had as much choice, as he had. The power to *compromise,* and to *arbitrate,* which mean the same thing, did not authorise a submission to *amicable compounders*. A man may be well supposed ready to submit

EasternDis't
*April*, 1827.

PATTERSON
*vs.*
LAFARGE.

his differences to the former, knowing that, by the laws of France, where the arbitration was to take place, the persons so chosen must proceed according to law, and that an appeal lay from their judgment: and yet, not be willing to yield his rights to the final decision of the latter, who are governed by no rules, and abandoned to their own ideas of equity. The French code of procedure, offers a very strong argument in support of this reasoning. By the 1009th article of that work, it is declared, that the arbitrators and umpire shall decide according to the rules of law, unless the submision gives them power to pronounce, *as amicable compounders.* Now, the words *used in the power of attorney,* ought not to have, and cannot have a greater effect, than they would have, if *used in a submission to arbitration;* and if the principal, in an instrument of the kind last mentioned, had submitted his case to *arbitrators,* or to *arbitration,* it is clear these expressions would not have authorised the persons named, to have acted *as amicable compounders.* Hence it follows, that an authority to an other, to submit to arbitrators, must have the same limitation.

As, therefore, the award was made without authority, no consideration existed for the drafts on which this action is brought, and consequently the plaintiff cannot recover.

As to the defendant's claim in re-convention, the evidence is quite contradictory, and it is impossible for this court to say, how the balance would stand, on a full settlement of the partnership accounts. The attorney, in fact, of the defendant, swears that the amicable compounders had no evidence before them, when they made their award. But that the judgment given by them, was entirely based on an agreement, or transaction, entered into by him and the plaintiff. The reasons for the attorney making this arrangement, as he states, were, the peculiar situation in which La Farge's affairs were involved, and the responsibility which he, the agent, had incurred. That the plaintiff claimed the one fourth of the profits of the sugar estate, which he declared he had received intelligence, was sold by the defendant, for $180,000, and that he proposed a settlement on these terms:

| CREDIT. | *Frs.* |
| --- | --- |
| ¼ of the share in the profits, | 100,000 |

Eastern Dis't
*April*, 1827.

PATTERSON
*vs.*
LAFARGE.

DEBIT.  *Frs.*

Monies belonging to the part-
    nership funds, withdrawn
    by him                                      40,000
½ of losses sustained                       15,000

                                                    55,000
                                           —————————

                                    *Frs.* 45,000

for which he was willing to take *frs.* 35,000 in
drafts on the defendant; and the amicable
compounders having confirmed this arrange-
ment, the bills on which this suit was brought
were drawn.

Now, it appears by the admission of the
parties on record, that the plantation only
sold for $110;000, at 1, 2, 3, 4, 5, and 6
years credit. The plaintiff, therefore, if
the witnesses on the part of the defendant
are to be believed, either committed a gross
fraud in making the representation, or he
had been egregiously misinformed himself
of the real amount of the sale.

The testimony obtained by the commis-
sion sent out to the arbitrators, differs from
this in many particulars; though they wince
so much at some of the interrogatories, and
refuse to answer others, that the impression

left on our mind *is,* that there was an error committed in the settlement. But they deny, firmly, that their sentence was founded on the representation of Patterson, as to the sale of the sugar plantation, or the eventual profits that might result therefrom. On the contrary, they declare, that it was after a full examination of all the papers submitted to them by both parties, that they rendered their decree; and that no other considerations entered into their minds but those produced by the evidence.

It appears that La Farge drew largely from this country on the house in France, to pay for the sugar plantation which he purchased here. On this head the witnesses for defendant are very particular in stating the precise amount which he remitted to meet these drafts; but they do not give the amount of the bills, the remittances were to replace. The arbitrators state, that these drafts amounted to 60,000 francs, 22,000 of which were paid by the house. They also state, that there was no evidence furnished to them, that La Farge had furnished the whole amount of the capital.

Under a view of the whole evidence we

think the case is not before us in such a shape as enables us to pronounce definitely on it.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; that the cause be remanded for a new trial, and that the appellee pay the costs of this appeal.

*Workman & Grymes* for the plaintiff, *Dennis* for the defendant.